[Cohn & Goldberg Lbr. Co. v. Robbins.]

# Cohn & Goldberg Lbr. Co. *v.* Robbins.

## *Damages for Injury to Buggy.*

(Decided Feb. 18, 1909.   48 South. 853.)

1. *Evidence; Declaration of Persons in Possession; Admissibility.* The object of the declaration being solely for the purpose of proving that the property which injured the buggy belonged to the defendant, and no notice of such declaration having been given to defendant, the declaration of the driver of the team made after the accident as to the ownership of the team, was not admissible.

2. *Same; Relevancy; Res Gestae.*—A declaration made while in the actual possession and control of personal property, and explanatory of such possession, was admissible as part of the res gestae of such possession.

3. *Same; Opinion Evidence; Mental State.*—A witness not being competent to testify as to a particular person's mental status, his testimony that a woman who was driving the horse was so anxious that she got the impression on her part that she was in danger, is not admissible, in an action for injury occurring in a collision between an ox team and wagon and a horse and buggy.

4. *Same; Expert Testimony.*—Where there was evidence that the driver of an ox team was an experienced ox driver and as to how he was managing the team at the time of the accident, it was competent for such driver to give his opinion as to whether the team was driven at the time in a proper manner.

5. *Same; Admission by Agent; Time of Making.*—A declaration made by an agent while conducting a transaction within the scope of the agency is admissible for the purpose of throwing light upon the transaction itself.

6. *Highways; Use for Travel; Instruction.*—A charge asserting that if the jury believed that immediately prior to or at the time of the collision the driver of the oxen did all that a prudent and careful driver could have done, to prevent the collision, they could not find for the plaintiff, would justify a finding for the defendant, although the driver might have done nothing immediately prior to the collision to prevent it, and its refusal was proper.

7. *Same.*—A charge asserting that if the jury believe that defendant's driver was a prudent driver of steers, and that he used every means in his power to prevent a collision, they must find for the defendant, is improper since the driver might have been a prudent driver and yet not competent to manage a team of the character of one in possession.

8. *Same.*—A charge asserting that if. at the time of the accident, the oxen became suddenly frightened, and the driver did all that a skillful and prudent driver could have done under the circumstances

159—19

to prevent the accident, the jury should find for the defendant, and if they believe that the injury was occasioned by the sudden fright on the part of the oxen and that the driver did all that a reasonably prudent and careful driver could do to prevent the accident, they should find for the defendant, pretermits the absence of fault on the part of the driver in the sudden frightening of the oxen.

9. *Same.*—A charge asserting that if the driver of the oxen did all that was possible to be done at the time of the accident to prevent the same, and he was a competent driver, the jury could not find for the plaintiff, limits the preventive effort to the time of the accident and was properly refused.

10. *Same.*—Where the action was against the C. & G. Lbr. Co., and the evidence tended to show that the oxen and wagon doing the damage was the property of the C. & G. Lbr. Co., a charge asserting that unless the jury believed from the evidence that the oxen were the property of the C. & G. at the time of the accident, they must find for the defendant, is properly refused.

11. *Charge of Court; Argumentative.*—A charge asserting that public bridges are for the use of oxen and drays as much as for horses and buggies, was properly refused as argumentative.

12. *Trial; Objection to Evidence; Time for.*—An objection to a question not made until after the witness answers the question comes too late, notwithstanding the court declared the evidence proper at the time he overruled the objection.

13. *Principal and Agent; Proof of Agency; Declaration of Agent.*—The fact of agency cannot be proven by the declarations of the agent.

APPEAL from Elmore Circuit Court.

Heard before Hon. W. W. PEARSON.

Action by W. O. Robbins, Jr., against the Cohn & Goldberg Lumber Company. Judgment for plaintiff, and defendant appeals. Reversed and demanded.

The cause of action is based upon the injury done to the horse and buggy of plaintiff by being run into by a team of oxen and wagon belonging to the defendant and at the time under the control and management of one L. F. Hood, a servant of the defendant. While Robbins was being examined as a witness, and had testified that Mrs. Lancaster was in the buggy and was driving, meeting the team of oxen, he was asked by his counsel: "Did you hear Mrs. Lancaster say anything?" Objection being overruled to this question, the plaintiff put it in the following form: "Now, then, did you hear Mrs.

Lancaster say anything to the driver?" And the witness answered: "I could see that Mrs. Lancaster was anxious." And counsel asked the witness the following question: "So anxious that she got the impression on her part that she was in danger?" And the witness answered: "Yes, sir." Then the bill of exceptions shows that the defendant objected to the question and answer because it called for irrelevant testimony, and because the evidence sought was hearsay, and the court remarked: "I don't think so, and I overrule the objections." L. F. Hood was called as a witness for plaintiff, and testified that after the accident he called Mr. Robbins, and "he asked me whose team it was," and plaintiff's attorney then asked the witness: "Whose property did you tell him it was?" Objection was interposed and overruled, and the witness answered: "I told him it was Mr. Goldberg's and Mr. Cohn's, and Mr. Norris', I suppose." This is the evidence referred to in the opinion.

The following charges were requested by, and refused to, the defendant:

"(2) If you believe from the evidence that L. F. Hood was the agent of the Cohn & Goldberg Lumber Company, and that the team of steers which collided with the horse and buggy of Robbins belonged to the Cohn & Goldberg Lumber Company, and that, immediately prior to or at the time of the collision between said team and the buggy of said Robbins, said Hood did all that a prudent and careful driver could have done to prevent a collision, then you cannot find for the plaintiff in this case.

"(3) If you believe from the evidence in this case that L. F. Hood, the driver of said team, was a prudent driver of steers, and that he used every means in his power to prevent a collision between the dray and the steers in his charge and the buggy and horse in the charge of W. O. Robbins, Jr., then you must find for the defendant.

"(4) If you believe from the evidence in this case that the said steers and wagon were under the control of an ordinarily skillful and prudent driver, no matter whether said driver was in the employ of the Cohn & Goldberg Lumber Company or J. E. Wamble, and that at the time of the accident the steers became suddenly frightened, and that the driver did all that a skillful and prudent driver of steers could have done under the circumstances to prevent the accident, then you cannot find a verdict for the plaintiff in this case.

"(5) If you believe from the evidence in this case that the injury to the horse and buggy of W. O. Robbins, caused by the steers and team colliding with same, was occasioned by a sudden fright on the part of the steers, and that the driver in charge of the same did all that a reasonably prudent and careful driver could do to prevent the accident, then plaintiff cannot recover in this case.

"(6) If you believe that L. F. Hood, who, it is shown by the undisputed evidence, was in charge of the steers and wagon causing the injury to the plaintiff, did all that was possible to be done at the time of the accident to prevent the same, and that he was an ordinarily prudent and careful driver of steers, and accustomed to drive same, then you cannot find for the plaintiff in this case.

"(7) The court charges the jury that, unless they believe that the steers were the property of Cohn & Goldberg at the time of the accident or damage complained of, then you must find for the defendant."

"(12) Public bridges are for the use of steers and drays, as much as for horses and buggies."

FRANK W. LULL, and GUNTER & GUNTER, for appellant. Counsel discuss the questions presented by the assignment of error, but without citation of authority.

PHARES COLEMAN, and HOLLY & McMORRIS, for appellee. Counsel discuss the questions presented by the assignment of errors, but without citation of authority.

DOWDELL, C. J.—The general rule is that the declaration of one made while in the actual possession and control of personal property, and explanatory thereof, is admissible in evidence, and this upon the idea that it is a part of the res gestæ of such possession.—Mayfield's Digest, vol. 3, p. 453, § 355. We think, however, when, as in the present case, the person whose declaration is sought to be proven is himself the witness testifying, and not being sought for purpose of impeachment, such evidence would be of little probative force, since the sworn testimony of the witness as to the facts would be better evidence than his unsworn declaration. The majority of the court are of the opinion, and so hold, that under the facts of this case the declaration of Hood, admitted in evidence, as to the ownership of the team, made by him while in the possession and control of the same as a driver, does not come within the principle above stated as to declarations, made by one in possession of property, explanatory of such possession, and that in the admission of this evidence the court committed reversible error. The writer, with whom McCLELLAN, J., concurs on this point, is of the opinion that if the declaration of one in possession, explanatory of such possession, be admissible in evidence upon the theory of res gestæ of the possession, which seems to be the universal rule, such declaration explanatory of possession would not be rendered incompetent because it might tend to show ownership of the property in a third party.

The plaintiff was permitted to prove by his witness Robbins, against the objection of the defendant, that a

Mrs. Lancaster, whom witness passed in a buggy on the bridge just preceding the collision between the ox team and the plaintiff's buggy, "was so anxious that she got the impression on her part that she was in danger." In the admission of this evidence against the defendant's objection the court was in error. The anxiety of Mrs. Lancaster was wholly irrelevant and immaterial, and, besides, the witness was not competent to testify as to the mental status of Mrs. Lancaster. The majority of the court, however, are of the opinion that, since it appears from the bill of exceptions that the objection was not made to the question until after the witness answered, the objection came too late, and that the action of the court in overruling the objection and admitting the evidence should not, for this reason, be revised, notwithstanding the court, in overruling the objection, expressed the opinion that the evidence was competent. The writer of the opinion thinks that, since the court evidently based its ruling upon the competency of the evidence, and not upon the ground that the objection came too late, which latter ground is one addressed to the discretion of the court, the question is one proper for revision by this court.

There was evidence tending to show that the driver of the ox team was an experienced driver, and also evidence showing how he was managing the team at the time of the accident. On this evidence it was competent for the witness Norris, who was shown to be an experienced and expert driver of ox teams, to give his opinion as to whether the manner in which the team was driven was proper.

Charge 2, requested by the defendant, was rendered bad in the use of the disjunctive conjunction "or," and for this reason, if no other, was properly refused. By this charge the jury were instructed to find for the de-

fendant, although the driver of the ox team might have done nothing "immediately prior" to the collision to prevent the same.

The third charge asked by the defendant is subject to the criticism that it pretermits the competency of the driver of the ox team. He might have been a prudent driver, and yet not competent to manage a team of the character of the one in question, and, if not, the defendant would be liable for an injury done another caused by the incompetency of the driver.

The fourth and fifth charges are each faulty in pretermitting an absence of fault on the part of the driver in the "sudden fright" of the oxen, and for this reason, if no other, these charges were properly refused.

The sixth charge limits all preventive efforts to avoid the injury to the time of the accident, when it might have been avoided by taking precautionary measures before the time of the accident.

There was no evidence that the team was the property of Cohn & Goldberg, but the property of Cohn & Goldberg Lumber Company, and hence charge 7 was properly refused.

The twelfth charge requested by defendant was argumentative, and there was no error in refusing it.

In accordance with the holding of the majority of the court, for the error committed in the admission of the evidence of the witness Hood, indicated above, the judgment must be reversed, and the cause remanded.

Reversed and remanded.

SIMPSON, J.—In behalf of the majority of the court, holding that the witness Hood should not have been allowed to testify that he had said, shortly after the accident, that the wagon and team belonged to the defendants, I desire to say: First. That the remark was not

made at the time of the accident, but after the witness and the team had crossed the bridge and proceeded into the town of Wetumpka.—*Williams v. State,* 130 Ala. 109, 117, 30 South. 484. Second. The object of this testimony was not to explain his possession, nor was it sought as a part of the res gestæ to explain the accident, but for the purpose of proving that the property belonged to the defendant. It may also be said, upon the general proposition referred to by our Brother who writes the opinion, that the rules of evidence must be construed as an entire body of laws, and that the fact that, under certain circumstances, given testimony is admissible, does not mean that it should be admitted when its purpose and effect is to override other fundamental principles of law. The fact that, under certain circumstances and conditions, the declarations of a party in possession may be admitted, to explain his possession, and that matters which are a part of the res gestæ may be admitted do not mean that such testimony is admissible against a third party, when it is a violation of the fundamental principles in regard to hearsay testimony to admit it.

It is a settled principle in the law of agency that, while the declarations of an agent who is admitted or proved to be such, may be admitted, if made in conducting a transaction within the scope of his agency, for the purpose of throwing light upon the transaction itself, it is equally true that the fact of agency cannot be proved by the declarations of the agent.—1 Elliott on Ev. § 252; 2 Elliott on Ex. §§ 1631 (note 21), 1636; *Whiting & Co. v. Lake,* 91 Pa. 349; *First Nat. Bank of Tuscaloosa v. Leland,* 122 Ala. 289, 295, 296, 25 South. 195; *Owensboro Wagon Co. v. Bliss et al.,* 132 Ala. 254, 260, 31 South. 81, 90 Am. St. Rep. 907; *Mobile & Montgomery R. v. Ashcraft,* 48 Ala. 15, 30. While the acts and declara-

tions of one in possession are admissible to explain his possession, yet they are not admissible to prove ownership of or with another, unless notice thereof is brought home to the other.—*Central, etc., Co. v. Smith,* 76 Ala. 572, 578, 579, 52 Am. Rep. 353; *Humes v. O'Bryan & Washington,* 74 Ala. 64, 78180. In the case just cited, the court held that the declarations of the partner were admissible, if at all, only because made against his interest, and because he "possessed competent knowledge of the facts, and is deceased at the time the declarations are proposed to be proved," but that even then "they cannot be said to be evidence against the defendant, Humes, of the existence of the partnership in question, unless some notice of them was brought to his knowledge." It is true, as intimated in that and in other cases, that where a partnership is sought to be proved by circumstantial acts, among which are continuous transactions by the partners, there may be cases where the declarations of one, acting continuously and openly in the partnership name, may be admissible as a circumstance, but that does not militate against the general principle.

In the case now before the court, the witness whose declarations were sought to be introduced was on the stand; and even if he possessed any competent knowledge of the ownership, it should have been proved by his testimony under oath, and not by his stating what he had said before. The cases in which expressions have been used which, taken from their context, may seem to be in conflict with the foregoing cases, are easily explainable on other principles. For instance, the case of *Daffron v. Crump,* 69 Ala. 77, was a trial of the right of property in a yoke of oxen which had been levied on as the property of said Daffron; and a claim was interposed by his wife, setting up that the property was hers. There was no question about the fact that said defend-

ant, Daffron, had bought the oxen and paid for them; the question to be solved being whether he bought them for himself or for his wife. Whether Daffron had paid for the oxen with his own money, or with that of his wife, was a matter not made clear by the evidence. Hence it became a matter to be proved, by circumstances, whether he was claiming them as his own or as the property of his wife. The case was reversed on another point, to wit, that a party who knows can testify as to the ownership of personal property (in such a case, which involved no question of the construction of a contract) ; and the court went on to make some remarks, for the guidance of the court below in trying the case again, to the effect that "in trials of the right of property, declarations or admissions by the defendant in execution, made in the absence of the claimant, are, as a rule, not admissible. They come under the class of hearsay evidence. But parties in possession of *such property may* make declarations explanatory of their possession, and either claim or disclaim ownership of the property, and such declarations may be given in evidence, in an issue of disputed ownership, no matter who be the parties to the suit." (Italics ours.) In other words, in this particular class of cases, there may be such a state of circumstances that it becomes necessary to prove, as circumstance, whether the husband is claiming the property as his own or as his wife's, in order to determine what his intentions were in buying it. · In the case of *Kirkland v. Trott,* 66 Ala., 417, Kirkland disclaimed possession in an action of ejectment, and the declarations of one Hogan, who was in possession, to the effect that he had taken possession for Kirkland, were admitted; but it was proved 'that Hogan had been defendant's agent or clerk before that time, or had been in business with him," and also that a written demand had been made

[Cohn & Goldberg Lbr. Co. v. Robbins.]

on Kirkland for possession, and that he had refused to deliver possession, saying nothing about Hogan's being in possession. In the case of *Brazier & Co. v. Burt,* 18 Ala., 201, the plaintiffs had levied on certain cotton as the property of John M. Mack, and the declarations admitted were really directions by Mack to his son to have the cotton ginned and packed and delivered to the claimant, and this evidence was to show that the conveyance was not simulated, but that Mack had in fact delivered it to the claimant, in accordance with the contract. It would be too tedious to notice particularly all the cases on this subject, but those discussed are probably the strongest that can be cited having any tendency to show the admissibility of this evidence.

Another fact may be noticed towit, that in all the cases where this testimony was admitted the point at issue was whether the party making the declaration was claiming the property himself, or, disclaiming any ownership, acknowledged that he held for another. In none of them was a party, who was acknowledged by both parties to have interest in the property, allowed, by his mere declarations, to show that the title to the property was in either one or the other, simply because he had been employed to transport it from one point to another. The fact is that a servant is not in the possession of personal property intrusted to him, but that his possession is the possession of his master. "A servant's declarations regarding the rights or liabilities of the master are incompetent, in the absence of some proof of express agency and evidence that the statements were within the line of the declarant's duty and made while he was in good faith seeking to discharge it."—16 Cyc. 1030. It is inconceivable that any court should declare that a mere servant, employed to drive a team, could, by his mere

declarations as to the ownership of the team, fix a liability on the master, and that, too, when the servant is present, and can be examined under oath, and made to show whether he knows anything about it.

ANDERSON, DENSON. and MAYFIELD, JJ., concur in the views of Justice SIMPSON. McCLELLAN, J., is of the opinion that there is no error in the record, and hence that an affirmance should be entered.